1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DOMINIC SON
General Delivery
1111 S Roop St
Carson City, NV 89701
(775) 273-8832
reflectnow@gmail.com

Filed __ Received __ Entered __ Served On
Counsel/Parties of Record

JUL 2 4 2025

Clerk US District Court
District of Nevada
By:_____ Deputy

| | |
|---|---|
| Dominic Son (Pro Se) <br><br> Plaintiff, <br><br> v. <br><br> OAKMONT PROPERTIES-AZURE, <br><br> FPI MANAGEMENT INC., and <br><br> HOUSING AUTHORITY OF THE <br><br> CITY OF RENO, <br><br> Defendants. | Case No.: 3:25-cv-00148-MMD-CSD <br><br> 5th Amended Complaint <br><br><br> Title: Son v. Oakmount Properties-Azure <br><br><br> JURY TRIAL DEMANDED |

11

12

13

14

15

1

16    **PRELIMINARY STATEMENT**

17

18    1.    This action seeks damages and relief for wrongful conduct by Defendants—a property

19          owner, its management agent, and a public housing authority—concerning Plaintiff's

20          tenancy and the administration of federal rental assistance funds during the COVID-19

21          pandemic.

22    2.    Plaintiff alleges that Defendants engaged in a course of conduct that included making

23          false claims and statements related to federal CARES Act funds, discriminating on the

24          basis of race and disability, and retaliating against Plaintiff for exercising his

25          constitutional rights.

26    3.    This alleged conduct was carried out through fraudulent misrepresentations, a civil

27          conspiracy, and other tortious acts, which ultimately resulted in Plaintiff suffering

28          significant financial damages and the loss of his housing.

29    4.    Plaintiff brings claims under the False Claims Act (31 U.S.C. § 3729 et seq.), the Fair

30          Housing Act (42 U.S.C. § 3601 et seq.), 42 U.S.C.§§ 1981 and 1983, and related state

31          laws over which this Court has supplemental jurisdiction.

32

33    **JURISDICTION AND VENUE**

34    5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

35          (federal question jurisdiction). Plaintiff's claims arise under the laws of the United States,

36          specifically:

37  6.  The **False Claims Act**, 31 U.S.C. § 3729 et seq., for allegations of widespread fraud,

38  misappropriation, and/or fraudulent inducement related to federal housing assistance

39  funds (including CARES Act and Section 8) and conspiracy to defraud the U.S.

40  Government.

41  7.  **42 U.S.C. § 1983,** for violations of Plaintiff's federal constitutional rights under the **First**

42  **Amendment** (e.g., retaliation for exercising free speech, public records requests) and

43  the **Fourteenth Amendment** (e.g., Equal Protection Clause for racial and disability

44  discrimination; Due Process Clause for arbitrary and conscience-shocking conduct,

45  deprivation of protected property interests without due process) by Defendants acting

46  under color of state law (specifically RHA).

47  8.  The **Fair Housing Act**, 42 U.S.C. § 3601 et seq., for allegations of racial and disability

48  discrimination in housing.

49  9.  This Court has supplemental jurisdiction over Plaintiff's related state law claims,

50  including but not limited to fraudulent misrepresentation, breach of contract, common

51  law negligence, and intentional infliction of emotional distress, pursuant to 28 U.S.C. §

52  1367. These state law claims arise from the same common nucleus of operative facts as

53  the federal claims and are so related to the claims within the Court's original jurisdiction

54  that they form part of the same case or controversy.

55

56  **VENUE**

57  10.  This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) and

58  (b)(3).

3

59    11.    A substantial part of the events or omissions giving rise to the claims occurred in the
60            State of Nevada, within this judicial district, and within this division, as Oakmont
61            Properties, which is the subject of this action, is located in Sparks, Nevada, within the
62            District of Nevada, Reno Division. Plaintiff's tenancy, all fraudulent misrepresentations,
63            breaches of contract, breaches of warranty, intentional conduct by Defendants, the
64            emotional distress suffered by Plaintiff, and all other causes of actions outlined occurred
65            at and arose from events and omissions at the Oakmont Azure Apartments property at
66            address: 550 Marina Gateway Dr., Sparks, NV 89434.

67    12.    Defendant Oakmont Properties-Azure, while organized under the laws of Delaware and
68            registered as a Foreign Limited-Liability Company in Nevada, conducts business in this
69            judicial district and division, as its principal place of business is in California, and the
70            location of the Oakmont Azure Apartments property are within Sparks, Nevada, in the
71            District of Nevada, Reno Division.

72    13.    Defendant FPI Management, while organized and having its principal place of business
73            in California, regularly transacts business and manages properties, including Oakmont
74            Azure Apartments, within the District of Nevada, and their demonstrable actions and
75            omissions in managing Oakmont Azure Apartments in Nevada form a substantial part of
76            the events giving rise to Plaintiff's claims.

77    14.    Defendant The Reno Housing Authority, also involved in the events and omissions
78            giving rise to these claims, is located within the City of Reno, State of Nevada, and
79            therefore within this judicial district and division.

4

80   **15.**   Venue is proper in the United States District Court for the District of Nevada pursuant to

81        28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to

82        Plaintiff's claims occurred in this judicial district.

83   16.   Additionally, Defendant FPI Management's actions and omissions within this District

84        concerning the Oakmont Azure Apartments in Sparks, Nevada, form a substantial part of

85        the events giving rise to Plaintiff's claims, thereby establishing proper venue for all

86        Defendants in this Court.

87

88   **PARTIES**

89

90   17.   Plaintiff, DOMINIC SON, is an individual and resident of Carson City, Nevada, whose

91        current mailing address is: General Delivery, 1111 S Roop St, Carson City, Nevada.

92        89701, who was a previous tenant at Oakmont Azure Apartments at 550 Marina Gateway

93        Dr., Sparks, NV, 89434, during the period relevant to this Complaint and who suffered

94        direct and demonstrable harm as a result of Defendants' wrongful actions.

95

96   18.   Defendant OAKMONT PROPERTIES-Azure, LLC. ("Oakmont Azure") is a foreign

97        limited liability company in Nevada, organized and existing under the laws of Delaware,

98        believed to be formed in California, with its principal place of business believed to be at:

99        3508 Kendell Hill Drive, Santa Rosa, CA 95404 (based on records for a related entity,

100       Oakmont Properties), and with a business address at: 550 Marina Gateway Drive, Sparks,

101    NV 89434. For purposes of service of process in Nevada, Defendant Oakmont Azure's

102    Registered Agent is believed to be: PARACORP INCORPORATED, 318 N Carson St

103    #208, Carson City, NV, 89701. Oakmont Azure is the owner and landlord of the Azure

104    Apartments property and contracts with Defendant FPI Management to operate and

105    professionally manage the property on its behalf as Agent.

106

107    19.    Defendant FPI MANAGEMENT, INC. ("FPI Management") is a corporation, organized

108    and existing under the laws of California, with its principal place of business and mailing

109    address at: 800 Iron Point Road, Folsom, CA 95630. For purposes of service of process in

110    California, Defendant FPI Management's Registered Agent is believed to be: C T

111    CORPORATION SYSTEM, 330 N Brand Blvd, Glendale, CA 91203. FPI Management

112    professionally manages the Oakmont Azure Apartments property on behalf of Defendant

113    Oakmont Azure.

114    20.    Non-Parties who are, and at all material times mentioned herein were, employed by

115    Defendant FPI Management, Inc., acting in their capacity asCommunity Directorsand

116    Assistant Managers at Oakmont Azure Apartments.

117

118    21.    Defendant HOUSING AUTHORITY OF THE CITY OF RENO ("Reno Housing

119    Authority") abbreviated as RHA, is a government agency by the City of Reno, under

120    Nevada law, with its office at: 1525 East Ninth Street Reno, Nevada 89512. The Reno

121    Housing Authority is responsible for administering housing assistance programs within

| 122 | | the City of Reno, including, but not limited to, the potential administration of CARES |
| 123 | | Act funds relevant to the allegations in this Complaint. |

124

## FACTUAL BACKGROUND (FB)

126

### The Parties

128  22.  Plaintiff is an individual and a former tenant of the property at issue.

129  23.  Defendant Oakmont Properties ("Oakmont") is a substantial real estate entity that owned

130       the subject property, Azure Apartments, at all relevant times.

131  24.  Defendant FPI Management ("FPI") is a large, national property management corporation

132       that acted as the agent for Defendant Oakmont in the operation of Azure Apartments.

133  25.  Defendant Reno Housing Authority ("RHA") is a municipal corporation and Public

134       Housing Authority serving the City of Reno, the City of Sparks, and Washoe County.

135       Defendant RHA receives federal funds and administers federal housing assistance

136       programs, including those funded by the CARES Act.

### General Allegations

138  26.  In or around June 2020, Plaintiff entered into a lease agreement with Defendants

139       Oakmont and FPI for a unit at the newly constructed Azure Apartments in Sparks,

140       Nevada.

141  27.  The advertisement of the property as a gated community with functional security was a

142       material factor in Plaintiff's decision to enter into the lease agreement.

143  28.   Defendants offered a rent concession upon move-in, which Plaintiff received.

144  29.   Plaintiff's decision to enter into the lease was influenced by Defendants' public

145        representations and marketing, including a 'COVID Pledge', which promised a supportive

146        and ethical approach to property management during the pandemic.

147  **Allegations Regarding Breach of Quiet Enjoyment and Habitability**

148  30.   During Plaintiff's tenancy, Plaintiff's quiet enjoyment of the premises was consistently

149        disrupted by excessive noise from common area facilities located in close proximity to

150        the unit.

151  31.   A defective window in the unit, which failed to close properly, exacerbated noise

152        intrusion and created a security risk.

153  32.   On at least one occasion, agents of the Defendants attempted to enter Plaintiff's apartment

154        without prior notice, further disrupting Plaintiff's sense of security and quiet enjoyment.

155  **Initial Representations Regarding Federal Rental Assistance**

156  33.   At the outset of the COVID-19 pandemic, as Plaintiff faced financial hardship, an agent

157        for the Property Management Defendants advised Plaintiff to halt rent payments.

158  34.   The agent represented that Defendants would provide Plaintiff with a proprietary form to

159        apply for federal CARES Act assistance and that they would assist Plaintiff in securing

160        aid.

161  35.   Defendants provided Plaintiff with said application form, which stated that Defendants

162        would prepare and submit rental assistance applications on residents' behalf.

163  36.   Relying on these representations, Plaintiff completed and submitted the required form to

164        Defendants' agent to initiate the assistance process.

8

165    **Allegations Regarding Assurances and Property Maintenance**

166    37.    An agent for the Property Management Defendants gave Plaintiff assurances that an

167            eviction would not be pursued as long as Plaintiff remained in communication regarding

168            the status of the rental assistance.

169    38.    In response to Plaintiff's inquiries about consistently non-functional security gates, a

170            manager acknowledged that the gates were not operational due to internal administrative

171            issues and a lack of staffing.

172    **Allegations of Fraudulent Inducement**

173    39.    Plaintiff alleges that agents for the Property Management Defendants made material

174            representations of substantial forthcoming federal rental assistance.

175    40.    These representations were made to induce Plaintiff to make a large payment of over

176            $10,000 on an outstanding account balance.

177    41.    Relying on these representations that significant aid would be applied to the account after

178            the payment was made, Plaintiff tendered the substantial payment as demanded.

179    42.    After the payment was received, Defendants' agents altered their position, indicating that

180            any promised assistance would be drastically reduced in scope from what was initially

181            promised.

182    43.    Ultimately, Defendants failed to provide the substantial assistance as represented and

183            applied only a nominal, inconsequential credit to Plaintiff's account.

184    44.    Plaintiff alleges, upon information and belief, that this "bait and switch" conduct was a

185            deliberate scheme to extract a large payment from Plaintiff with no intention of fulfilling

186            the promises of aid used to induce that payment.

187    **Allegations Regarding Property Conditions**

188    45.    Plaintiff alleges that during his tenancy of over three years, Defendants failed to maintain

189    essential security amenities, including the main security gates, which were consistently

190    non-functional. This failure to provide advertised security amenities created unsafe living

191    conditions.

192    **Allegations Regarding Accumulation of Fees and Non-Application of Federal Funds**

193    46.    Plaintiff alleges that agents for the Property Management Defendants advised Plaintiff to

194    halt direct rent payments while awaiting a decision on federal assistance.

195    47.    As a direct result of following this advice, a significant balance accrued on Plaintiff's

196    account.  Plaintiff alleges that these fees were improperly assessed, as the underlying

197    balance accumulated based on Defendants' own instructions.

198    48.    Despite Plaintiff making subsequent substantial payments toward rent, the balance

199    continued to grow due to the ongoing assessment by Defendants of significant monthly

200    late fees and other penalties.

201    49.    Despite Defendant FPI Management's representations of forthcoming federal rental

202    assistance, Plaintiff's severe financial hardship, and the accumulation of significant fees

203    on Plaintiff's account, Defendants prioritized internal financial incentives.For instance, on

204    or about April 6, 2022, after Plaintiff had formally disclosed his diagnosed disability and

205    ongoing financial distress to an agent of Property Management Defendants, Defendant

206    FPI Management, through its Community Director, confirmed approval for and applied a

207    $500 credit to Plaintiff's account for a tenant referral.This occurred at a time when

208    substantial federal assistance remained unapplied to Plaintiff's account, suggesting a

| 209 | | misapplication or diversion of funds that should have been prioritized for federal aid |
| 210 | | purposes. |
| 211 | 50. | Throughout this period, Defendants were aware of the accumulating fees and had access |
| 212 | | to federal CARES Act funds designated for such situations, yet they failed to apply these |
| 213 | | funds to Plaintiff's account to cover the rent or the escalating fees." |

214 **Allegations of Unfulfilled Promises Regarding Federal Assistance and Inducement of**
215 **Payment**

| 216 | 51. | Plaintiff alleges that an agent for the Property Management Defendants non-verbally |
| 217 | | confirmed that federal pandemic assistance funds intended to benefit the Plaintiff had |
| 218 | | been received by the Defendants. |
| 219 | 52. | Despite prior assurances from Defendants' agents that Plaintiff would not face eviction, |
| 220 | | Defendants subsequently issued a formal eviction threat. |
| 221 | 53. | Plaintiff alleges that agents for the Property Management Defendants induced Plaintiff to |
| 222 | | make a substantial payment of over $10,000 to bring the account current by making |
| 223 | | additional promises. |
| 224 | 54. | These promises included commitments that, upon receiving the payment, previously |
| 225 | | assessed late fees would be reversed and that federal assistance funds would be credited |
| 226 | | to Plaintiff's account, effectively refunding a substantial portion of the payment. |
| 227 | 55. | Based on these specific promises and assurances from Defendants' agents, Plaintiff made |
| 228 | | the substantial payment as demanded. |
| 229 | 56. | After the payment was made, Defendants failed to reverse the fees or apply the promised |
| 230 | | assistance credits as previously assured. |

231  **Allegations Regarding Inaccurate Financial Accounting**

232  57.  Plaintiff alleges that tenant ledgers and financial statements provided by Property

233      Management Defendants contained multiple significant discrepancies and inaccuracies.

234  58.  Plaintiff made a substantial payment intended to resolve outstanding issues and secure

235      promised assistance. Despite this payment, Defendants subsequently assessed improper

236      late fees.

237  59.  Plaintiff alleges that the ledgers contained entries that falsely suggested a full and final

238      resolution of the account disputes when, in fact, substantial unresolved issues and

239      unfulfilled commitments regarding federal assistance remained.

240  60.  Plaintiff further alleges that the ledgers contained numerous unexplained or contradictory

241      entries, including reversed charges and trivial, nonsensical credits, which indicate a

242      pattern of unreliable and manipulative accounting practices.

243  61.  Plaintiff alleges, upon information and belief, that these accounting irregularities were

244      not accidental but were part of a deliberate effort by Defendants to obfuscate the true

245      status of Plaintiff's account and the disposition of federal assistance funds.

246  **Dispute Over Prior Commitments and Subsequent Retaliation**

247  62.  Plaintiff alleges that agents of the Property Management Defendants repeatedly advised

248      Plaintiff to delay rent payments while federal assistance applications were pending,

249      which directly caused a substantial balance to accrue on Plaintiff's account.

250  63.  Plaintiff alleges, upon information and belief, that this conduct was part of a scheme by

251      Defendants to allow a large rental debt to accrue, which would potentially enable them to

252  claim a larger disbursement of federal assistance funds for their own benefit, rather than

253  applying it properly to Plaintiff's account.

254  64.  When Plaintiff attempted to resolve disputes over prior unfulfilled promises and

255  escalating fees with agents for the Property Management Defendants, a confrontation

256  occurred.

257  65.  Following this dispute, Defendants' agents accused Plaintiff of unacceptable behavior. In

258  response to Plaintiff's attempt to clarify the situation and review evidence, Defendants

259  ceased communication.

260  66.  Subsequently, Defendants retaliated against Plaintiff by barring Plaintiff from the

261  property's leasing office and other community amenities and imposed restrictive

262  communication protocols.

263  67.  During his tenancy and in the context of seeking assistance with ongoing account issues,

264  Plaintiff formally disclosed his diagnosed disability to an agent of the Property

265  Management Defendants by providing supporting documentation from a psychologist.

266  68.  The Defendants' extreme and outrageous conduct, including persistent

267  misrepresentations, broken promises, and retaliatory actions, exacerbated Plaintiff's

268  diagnosed mental health conditions, leading to severe and debilitating anxiety. This

269  profound emotional distress directly impaired Plaintiff's mental capacity required for his

270  profession as a web engineer/developer, significantly hindering his ability to work

271  effectively amidst heightened global competition during the pandemic's economic

272  disruption. The resulting professional setback contributed to a substantial work gap in

273  Plaintiff's resume job history, severely compounding the difficulty of being short-listed

274  for new employment. This financial strain forced Plaintiff to accrue significant credit

| | | |
|---|---|---|
| 275 | | card debt, damaging and depleting his credit, which ultimately culminated in the loss of |
| 276 | | his housing and homelessness. |
| 277 | 69. | Property Management Defendants exhibited frequent turnover of on-site management |
| 278 | | personnel during Plaintiff's tenancy. Plaintiff alleges this frequent management turnover |
| 279 | | resulted in a failure by Defendants to honor prior commitments made by former agents |
| 280 | | regarding federal rental assistance. |
| 281 | 70. | Plaintiff alleges that the parent entities, Defendants Oakmont and FPI Management, |
| 282 | | failed to implement adequate policies or oversight to ensure commitments made by their |
| 283 | | agents were documented and honored by subsequent agents. |
| 284 | 71. | As a direct result of this alleged systemic failure, promises regarding federal assistance |
| 285 | | made to Plaintiff remained unfulfilled, while Property Management Defendants |
| 286 | | continued to demand rent and assess fees against Plaintiff's account. |
| 287 | 72. | Plaintiff's subsequent requests for resolution, including requests for lesser amounts of |
| 288 | | assistance, were also denied by Defendants' agents. |
| 289 | | Post-pandemic crisis / Move-out conduct (2024): |
| 290 | 73. | Upon vacating the premises, a dispute arose concerning Plaintiff's move-out process and |
| 291 | | subsequent charges. |
| 292 | 74. | Agents for Property Management Defendants gave Plaintiff conflicting instructions |
| 293 | | regarding the removal of remaining personal belongings, creating an unreasonable and |
| 294 | | urgent demand for removal which resulted in the theft of some of Plaintiff's property. |
| 295 | 75. | Subsequently, Property Management Defendants issued a substantial move-out invoice |
| 296 | | containing numerous charges that Plaintiff disputes. These disputed charges include, but |
| 297 | | are not limited to: |

298  76.    Significant charges for the replacement or repair of major appliances that Plaintiff alleges
299         were in good working order and not damaged beyond reasonable wear and tear.
300         Defendants failed to provide substantiation for these charges.

301  77.    Charges for rent for a period after Plaintiff had already vacated the premises and entered
302         into a new lease elsewhere.

303  78.    Substantial charges for cleaning and "wear and tear," despite Plaintiff having been
304         permitted to, and having spent several days, cleaning the unit.

305  79.    The failure to return Plaintiff's security deposit and apply it against any valid charges.

306  80.    The entirety of the disputed debt was quickly referred by Defendants to a third-party
307         collection agency.

308  81.    Plaintiff alleges that these move-out charges and the rapid referral to a debt collector
309         were not based on legitimate damages but were imposed as a retaliatory measure and an
310         unfair trade practice.

311  **Facts Regarding Involvement of all three Defendants**

312  82.    Defendant Oakmont (Principal) entrusted the daily property management of the subject
313         property to its agent, Defendant FPI Management (Agent). The Principal and Agent are
314         collectively referred to as "Property Management Defendants."

315  83.    Defendant Reno Housing Authority (RHA) is a public agency that administers housing
316         assistance programs.

317  84.    The Property Management Defendants and Defendant RHA have a history of interaction
318         due to their respective roles in the administration of housing assistance.

319  85.    During the COVID-19 pandemic, Plaintiff sought rental assistance due to financial
320         uncertainty.

86. Plaintiff alleges, upon information and belief, that the Defendants' subsequent actions and omissions regarding federal pandemic assistance funds were part of a coordinated effort or confluence of conduct that prioritized Defendants' own financial or operational interests over their duties to fairly administer aid to tenants like Plaintiff.

87. An agent for the Property Management Defendants advised Plaintiff to defer rent payments with the implication that forthcoming federal assistance funds would cover the balance.

88. Property Management Defendants provided Plaintiff with a proprietary application form for federal CARES Act assistance, to be processed through their own channel.

89. At the same time, Property Management Defendants directed Plaintiff to also pursue assistance through a program administered by Defendant RHA.

90. In pursuing assistance from Defendant RHA, a representative from the Housing Authority Defendant informed Plaintiff that they had been unable to reach the Property Management Defendants to obtain required documentation for Plaintiff's application.

91. Defendant RHA placed the burden on Plaintiff to secure the necessary landlord verification documents from the Property Management Defendants. Plaintiff's application through this channel did not result in aid due to the alleged lack of landlord cooperation.

92. An agent for the Property Management Defendants later directed Plaintiff to apply for a different assistance program also administered by Defendant RHA.

93. While Plaintiff's applications were pending review by Defendants, Plaintiff experienced several brief periods of temporary employment. The denial of at least one of Plaintiff's assistance applications by an agent of Defendant RHA coincided with the review of income from one such temporary job.

344  94.   During the period Plaintiff was awaiting decisions on rental assistance, Property

345        Management Defendants consistently assessed late fees and other penalties against

346        Plaintiff's account. The total charges on Plaintiff's tenant ledger exceeded $10,000.

347  95.   Plaintiff alleges that Property Management Defendants failed to account for or

348        acknowledge receipt of Plaintiff's signed application for their proprietary assistance

349        channel.

350  96.   Plaintiff alleges, upon information and belief, that the Property Management Defendants

351        observed the denial of assistance by Defendant RHA's agent and used that denial as a

352        pretext for not processing or disbursing assistance through their own separate federal

353        assistance channel.

354  **Broken Promises made by PMDs FPI/Oakmont**

355  97.   Plaintiff alleges that promises were made by Property Management Defendants' agents

356        regarding account resolution and federal assistance, which were not honored after a lease

357        renewal.

358  98.   Subsequent property managers referenced prior demands for back rent but allegedly

359        failed to acknowledge or verify promises related to non-eviction.

360  99.   Plaintiff confronted a property manager regarding the alleged receipt of pandemic

361        assistance funds intended for Plaintiff, and the property manager's response was not a

362        direct denial.

363  100.  Despite promoting a COVID Pledge and allegedly receiving federal assistance funds,

364        Property Management Defendants failed to provide Plaintiff with assistance or accurate

365        information regarding these funds.

366 101.    When Plaintiff experienced a change in employment status, Defendants offered to
367         terminate the lease early rather than providing assistance through available federal funds.

368 102.    Plaintiff alleges that promises regarding federal rental assistance made by previous agents
369         were not verified or addressed by subsequent property managers, nor did Plaintiff receive
370         communication denying such promises.

371 103.    Plaintiff confirmed with a state housing authority representative that Azure Apartments
372         received federal emergency rental assistance funding.

373 104.    Plaintiff communicated the need for rental assistance to various property managers,
374         RHA, along with Emergency Eviction Prevention Program of Nevada (EEPP),
375         administered by RHA, via email.

376 **Allegations Regarding RHA Public Records Disclosures**

377 105.    Pursuant to a public records request, Defendant RHA confirmed to Plaintiff that no rental
378         assistance payments were made to Defendant Oakmont on Plaintiff's behalf.

379 106.    In the same public records response, Defendant RHA also provided documentation
380         indicating that payments were, in fact, made to Defendant Oakmont using federal
381         assistance funds, including funds designated as CARES Act Emergency Rental
382         Assistance.

383 107.    Plaintiff alleges these documents contained descriptions inconsistent with the stated
384         purpose of the funds and indicated that assistance was provided to only a limited number
385         of tenants at the property.

386 108.    Defendant RHA's own guidelines state that such federal funds may only be applied to
387         rent and late fees.

388  109.    Plaintiff alleges these contradictory disclosures from Defendant RHA indicate a failure to
389            properly account for or accurately report the disposition of federal funds.

390  **Corporate Knowledge/Cover-up**

391  110.    Plaintiff alleges, upon information and belief, that the systemic issues encountered,
392            including mismanagement of rental assistance, misleading communications from on-site
393            agents, and the aggressive pursuit of fees, were known to, or should have been known to,
394            executive or supervisory personnel within Property Management Defendants through
395            reasonable corporate oversight.

396  111.    Despite this actual or constructive knowledge, these Defendants allegedly failed to
397            intervene to correct the conduct of their agents or to ensure Plaintiff received fair
398            treatment and promised assistance.

399  112.    After Plaintiff vacated the property and attempted to resolve the issues, Property
400            Management Defendants, through their representatives, continued to deny wrongdoing.

401  113.    These denials were accompanied by the reassertion of unsubstantiated charges and
402            support for aggressive debt collection efforts against Plaintiff.

403  114.    Plaintiff alleges these actions represent a continuation of prior unlawful conduct.

404  115.    Prior to this action, Plaintiff sought to resolve issues with Property Management
405            Defendants, including communications in late 2024 and early 2025.

406  116.    During these communications, Plaintiff provided information to Property Management
407            Defendants regarding alleged financial irregularities.

408  117.    Specifically, on or about January 26, 2025, Plaintiff notified Property Management
409            Defendants, through their counsel, of a particular entry on Plaintiff's tenant ledger dated
410            March 11, 2022, asserting it was fraudulent and disputing its accuracy.

411  118.    Despite this notification, Property Management Defendants, through their counsel,

412          subsequently denied wrongdoing and did not address the specific allegation of fraudulent

413          accounting.

414  119.    **Principle/Agent Relationship:** Allegation that Defendant

415     a.   FPI Management was the agent of Oakmont Properties-Azure for managing the property

416          (Exhibit 25)

417     b.   FPI Management's actions described herein were undertaken within the course and scope

418          of that agency.

419     c.   Oakmont Properties-Azure is therefore vicariously liable for the wrongful acts and

420          omissions of its agent, Defendant FPI Management, as set forth in the following Counts.

421

422  **CAUSES OF ACTION**

423

424  **COUNT I: VIOLATION OF THE FALSE CLAIMS ACT**

425  **(31 U.S.C. § 3729 et seq.) (Against All Defendants)**

426  **120.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

427  fully set forth herein.

428  **121.** By engaging in the conduct described herein, Defendants knowingly presented, or caused to

429  be presented, false or fraudulent claims for payment to the United States Government, and/or

430  knowingly made, used, or caused to be made or used, false records or statements material to false

431    or fraudulent claims paid or approved by the Government, in violation of 31 U.S.C. §

432    3729(a)(1)(A) and (B).

433    **122. The False Statements and Fraudulent Course of Conduct:** To receive and retain federal

434    housing assistance funds, including but not limited to funds from the CARES Act, Defendants

435    were required to comply with federal program rules. Defendants' false statements and fraudulent

436    conduct included, but were not limited to:

437         a. Property Management Defendants creating and maintaining inaccurate tenant ledgers

438         containing false entries and improper fees, thereby creating a false record of accounts to

439         conceal the non-application of federal funds (**FB ¶¶ 57-61**).

440         b. Property Management Defendants making representations that they would properly

441         administer aid (**FB ¶¶ 34-35, 99-100**) while simultaneously taking actions to prevent

442         Plaintiff from receiving it, thereby falsely certifying, by implication, their compliance

443         with program rules (**FB ¶¶ 56, 91**).

444         c. Defendant RHA creating and disseminating contradictory and misleading records

445         regarding the disposition of federal funds paid to the property, falsely stating in one

446         instance that no payments were made on Plaintiff's behalf while other records confirmed

447         payments of federal funds were made to the property (**FB ¶¶ 105-109**).

448         d. Property Management Defendants misapplying or diverting funds, including those

449         indirectly stemming from federal assistance programs intended for tenant well-being,

450         towards internal incentives such as tenant referral awards, thereby concealing the true

451         disposition of funds and prioritizing their own financial gain over proper administration

452         of aid (**FB ¶ 49**).

453    **123. Knowledge (Scienter):** Defendants undertook these actions knowingly, with deliberate

454    ignorance, or with reckless disregard for the truth. This knowledge is evidenced by their

455    coordinated and systemic failure to apply promised aid **(FB ¶¶ 68-72)**, their agents' non-verbal

456    confirmation that funds had been received but not applied **(FB ¶ 51)**, and their refusal to correct

457    known accounting discrepancies after being notified by Plaintiff **(FB ¶¶ 117-118)**.

458    **124. Materiality:** Defendants' compliance with program rules and their submission of accurate

459    records regarding the use of federal funds were material to the Government's decision to pay

460    federal housing assistance funds to Defendants, and to allow Defendants to retain those funds.

461    **125. Damages to the United States:** As a direct and proximate result of Defendants' false claims

462    and statements, the United States Government has been damaged by paying out funds that were

463    not used for their intended purpose and for the benefit of the intended recipient. Plaintiff has

464    direct and independent knowledge of the fraudulent conduct alleged herein **(FB ¶¶ 22-118)**.

465

466    **COUNT II: VIOLATION OF THE FAIR HOUSING ACT - RACIAL**

467    **DISCRIMINATION (42 U.S.C. § 3604) (Against All Defendants)**

468    **126.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

469    fully set forth herein.

470    **127.** At all relevant times, Plaintiff, a Vietnamese-American, was a member of a protected class

471    based on his race and national origin. Plaintiff was qualified for the housing **(FB ¶ 22)** and

472    associated assistance programs at issue **(FB ¶¶ 33-36, 85, 103)**.

473    **128.** Defendants, and each of them, made housing unavailable to Plaintiff and discriminated

474    against him in the terms, conditions, and privileges of his tenancy because of his race and/or

475    national origin.

476    **129.** This discriminatory conduct includes, but is not limited to:

477        a. Making material misrepresentations regarding the availability of federal rental

478        assistance to induce a substantial payment of over $10,000 from Plaintiff **(FB ¶¶ 39-44,**

479        **53-56);**

480        b. Systematically failing to provide Plaintiff with promised federal CARES Act

481        assistance **(FB ¶ 43)** while providing it to other tenants **(FB ¶¶ 106-107);**

482        c. Subjecting Plaintiff to a pattern of unreliable and manipulative accounting

483        practices **(FB ¶¶ 57-61);**

484        d. Imposing fabricated and retaliatory move-out charges and then aggressively pursuing

485        debt collection against Plaintiff **(FB ¶¶ 75-81);** and

486        e. Barring Plaintiff from the leasing office and other amenities in retaliation for his

487        asserting his rights **(FB ¶ 66).**

488    **130.** Upon information and belief, Plaintiff alleges that Defendants' actions, including the failure

489    to provide promised aid and the imposition of pretextual fees, were motivated by discriminatory

490    animus based on Plaintiff's protected status.

491    **131.** As a direct and proximate result of Defendants' discriminatory conduct in violation of the

492    FHA, Plaintiff has suffered significant damages, including financial losses and severe emotional

493    distress **(FB ¶¶ 48, 81).**

494

**COUNT III: RACIAL DISCRIMINATION IN CONTRACTING (VIOLATION OF 42 U.S.C. § 1981) (Against All Defendants)**

132. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

133. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens. Plaintiff's lease is a contract protected by this statute **(FB ¶ 26)**.

134. Defendants, acting with discriminatory intent, interfered with Plaintiff's contractual rights under his lease agreement on the basis of his race and/or national origin.

135. This interference includes the discriminatory conduct detailed in Paragraph 129 above, which deprived Plaintiff of the benefits and privileges of his lease contract, including the right to be considered for and receive federal assistance on a non-discriminatory basis.

136. As a direct and proximate result of Defendants' intentional racial discrimination in violation of § 1981, Plaintiff has suffered significant damages, including financial losses, and severe emotional distress **(FB ¶ 81)**.

**COUNT IV: VIOLATION OF THE FAIR HOUSING ACT - DISABILITY DISCRIMINATION(42 U.S.C. § 3604(f))(Against All Defendants)**

137. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

514    **138.** At all relevant times, Plaintiff was a person with a disability as defined by the FHA, having

515    been diagnosed with a mental health condition (adjustment disorder).

516    **139.** Defendants knew or should have known of Plaintiff's disability, as Plaintiff provided formal

517    documentation of his diagnosis to an agent of the Property Management Defendants(FB ¶ 67).

518    **140.** During his tenancy and in the context of seeking assistance with ongoing account issues,

519    Plaintiff formally disclosed his diagnosed disability to an agent of the Property Management

520    Defendants by providing supporting documentation from a psychologist, as exemplified by an

521    email to Jessica with the subject line 'share with your regional manager' while in dispute over

522    alleged misrepresentations regarding assistance and lease renewal. **(FB ¶ 67).**

523    **141.** Defendants violated the FHA by refusing to make a reasonable accommodation in their

524    rules, policies, practices, or services, when such accommodation was necessary to afford Plaintiff

525    an equal opportunity to use and enjoy his dwelling. Instead of engaging in an interactive process,

526    Defendants ignored the request and offered a pretextual unrelated credit **(FB ¶ 49).**

527    **142.** As a direct and proximate result of Defendants' failure to provide a reasonable

528    accommodation, Plaintiff has suffered significant damages, including financial losses and severe

529    emotional distress **(FB ¶¶ 48, 81).**

530

531    **COUNT V: DENIAL OF EQUAL PROTECTION - DISABILITY**

532    **DISCRIMINATION(VIOLATION OF 42 U.S.C. § 1983)(Against Defendant RHA and,**

533    **Upon Information and Belief, All Defendants)**

25

534     **143.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

535     fully set forth herein.

536     **144.** Defendant RHA, as a state actor**(FB ¶¶ 25, 83)**, acted in concert with Defendants Oakmont

537     and FPI to deprive Plaintiff of his rights under the Fourteenth Amendment on the basis of his

538     disability. This joint activity is evidenced by the coordinated course of conduct alleged herein,

539     including RHA's direct awareness of the Property Management Defendants' non-cooperation

540     with assistance programs**(FB ¶¶ 90-91)**and RHA's subsequent provision of misleading public

541     records that shielded the Property Management Defendants' failure to accommodate or properly

542     administer aid**(FB ¶¶ 105-109).**

543     **145.** This unconstitutional conduct includes failing to ensure that the housing and assistance

544     programs involving public funds were administered in a non-discriminatory manner, and by

545     failing to engage in an interactive process or provide a reasonable accommodation after being put

546     on notice of Plaintiff's disability.Instead, Defendants prioritized internal financial incentives,

547     such as the tenant referral credit, at a time when substantial federal assistance remained

548     unapplied to Plaintiff's account, demonstrating a lack of good faith in addressing Plaintiff's needs

549     related to his disability and financial hardship (FB ¶ 49).

550     **146.** As a direct and proximate result of this violation of Plaintiff's constitutional rights, Plaintiff

551     has suffered significant damages, including financial losses, and severe emotional distress**(FB ¶¶**

552     **48, 81).**

553

**COUNT VI: DENIAL OF EQUAL PROTECTION - RACIAL DISCRIMINATION(VIOLATION OF 42 U.S.C. § 1983)(Against Defendant RHA and, Upon Information and Belief, All Defendants)**

**147.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

**148.** Defendant RHA, as a state actor**(FB ¶¶ 25, 83)**, acted in concert with Defendants Oakmont and FPI to deprive Plaintiff of his Fourteenth Amendment right to equal protection on the basis of his race and national origin. This joint activity is evidenced by the coordinated course of conduct alleged herein, including RHA's direct awareness of the Property Management Defendants' non-cooperation with assistance programs**(FB ¶¶ 90-91)**and RHA's subsequent provision of misleading public records that shielded the Property Management Defendants' discriminatory conduct from scrutiny**(FB ¶¶ 105-109)**.

**149.** This unconstitutional conduct includes, but is not limited to, the actions described in Paragraph 129 above, and by facilitating a system where federal funds were mismanaged or misreported in a manner that disparately harmed Plaintiff, a member of a protected class **(FB ¶¶ 105-109)**.

**150.** As a direct and proximate result of this violation of Plaintiff's constitutional rights, Plaintiff has suffered significant damages, including financial losses,  and severe emotional distress **(FB ¶¶ 48, 81)**.

574 **COUNT VII: VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT -**

575 **RETALIATION)(Against Defendant RHA and, Upon Information and Belief, All**

576 **Defendants)**

577 **151.**Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

578 fully set forth herein.

579 **152.**Plaintiff engaged in activities protected by the First Amendment, including making public

580 records requests to Defendant RHA and petitioning for a redress of grievances by disputing fees

581 and asserting his rights with all Defendants**(FB ¶¶ 64, 105)**.

582 **153.**In direct response to Plaintiff's exercise of his protected First Amendment rights, Defendants

583 took adverse actions against him, including barring him from the leasing office, imposing

584 fabricated move-out charges, and initiating aggressive debt collection**(FB ¶¶ 66, 75, 80-81)**.

585 **154.**Defendant RHA, as a state actor**(FB ¶¶ 25, 83)**, acted jointly and in concert with Defendants

586 Oakmont and FPI to retaliate against Plaintiff under color of state law. This joint activity is

587 evidenced by the Property Management Defendants taking the above-mentioned adverse actions

588 against Plaintiff in the same timeframe that Plaintiff was petitioning Defendant RHA for

589 information**(FB ¶ 105)**, and by RHA's own actions to shield the Property Management

590 Defendants from scrutiny**(FB ¶¶ 105-109)**, thereby participating in and ratifying the retaliation.

591 **155.**These adverse actions would chill a person of ordinary firmness from continuing to engage

592 in protected First Amendment activities.

593    **156.**As a direct and proximate result of Defendants' retaliation in violation of Plaintiff's First

594    Amendment rights, Plaintiff has suffered significant damages, including financial losses, and

595    severe emotional distress**(FB ¶ 81).**

596

597    **COUNT VIII: FRAUDULENT MISREPRESENTATION (Against Defendants Oakmont**

598    **Properties-Azure, FPI Management)**

599    **157.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

600    fully set forth herein. **This claim arises under state law and is brought pursuant to the**

601    **Court's supplemental jurisdiction as it arises from the same common nucleus of operative**

602    **fact as Plaintiff's federal claims.**

603    **158.** Defendants Oakmont and FPI Management ("Property Management Defendants") made

604    false representations of material fact to Plaintiff. These false representations included, but are not

605    limited to:

606         a. That Plaintiff would receive substantial federal rental assistance and that Defendants

607         would properly administer this aid **(FB ¶¶ 33-36, 97);**

608         b. That eviction would not be pursued as long as Plaintiff remained in communication

609         regarding the status of the rental assistance **(FB ¶ 37);**

610         c. That promises of significant aid and fee reversals would be honored upon Plaintiff's

611         payment of over $10,000 **(FB ¶¶ 53-54); and**

612         d. That the property was a secure, gated community with functional security

613         amenities **(FB ¶¶ 27, 45).**

614   **159.** At the time they were made, the Property Management Defendants knew these

615   representations were false, or made them with reckless disregard for the truth. This knowledge is

616   evidenced by, among other things, their subsequent failure to provide the promised aid **(FB ¶¶**

617   **43, 56)**, their contradictory accounting practices **(FB ¶¶ 57-61)**, and their non-verbal

618   confirmation that federal funds had already been received **(FB ¶ 51)**.

619   **160.** The Property Management Defendants made these false representations with the intent to

620   induce Plaintiff to act in reliance upon them, including by inducing Plaintiff to make a

621   substantial payment of over $10,000 and to continue his tenancy at the property **(FB ¶¶ 39-41,**

622   **53)**.

623   **161.** Plaintiff, ignorant of their falsity, justifiably relied on the Property Management Defendants'

624   false representations. In reliance, Plaintiff halted rent payments as instructed **(FB ¶¶ 33, 46)**,

625   tendered a substantial payment of over $10,000 **(FB ¶ 55)**, and continued his tenancy under the

626   belief that the promises of financial aid and a secure premises were true.

627   **162.** As a direct and proximate result of Plaintiff's justifiable reliance on the Property

628   Management Defendants' fraudulent misrepresentations, Plaintiff suffered significant damages,

629   including financial loss, damage to credit, and severe emotional distress, which contributed to his

630   loss of housing. **(FB ¶ 81)**.

631   **Prayer for Punitive Damages**

632   **163.** The foregoing acts by the Property Management Defendants were committed with

633   oppression, fraud, and malice, constituting a conscious disregard for the rights and safety of

634   Plaintiff **(FB ¶¶ 44, 57-61, 81)**.

635    **164.** Pursuant to Nevada Revised Statutes § 42.005 and § 42.007, Plaintiff is entitled to an award

636    of punitive damages against Defendants Oakmont and FPI Management in an amount sufficient

637    to punish said Defendants and deter them from similar conduct in the future.

638

639    **COUNT IX: NEGLIGENT MISREPRESENTATION (Pleaded in the Alternative) (Against**

640    **All Defendants)**

641    **165.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

642    fully set forth herein. This count is pleaded in the alternative to Plaintiff's claims for intentional

643    fraud. **This claim arises under state law and is brought pursuant to the Court's**

644    **supplemental jurisdiction as it arises from the same common nucleus of operative fact as**

645    **Plaintiff's federal claims.**

646    **166.** Defendants, in the course of their business and in transactions in which they had a pecuniary

647    interest, supplied false information and made material misrepresentations to Plaintiff. These

648    misrepresentations included, but were not limited to, false statements regarding:

649        a. The availability of and Plaintiff's eligibility for federal rental assistance **(FB ¶¶ 33-36,**

650        **53-54);**

651        b. The security of the premises, specifically the functionality of the security gates**(FB ¶¶**

652        **27, 45);** c. The status of Plaintiff's account and the nature of charges applied to his

653        ledger**(FB ¶¶ 57-61);** and

654        d. The terms under which Plaintiff was induced to make a substantial payment of over

655        $10,000 **(FB ¶¶ 53-54).**

656   **167.** In the alternative to the allegations of intentional fraud, Plaintiff alleges that at the time

657   Defendants made these misrepresentations, they failed to exercise reasonable care or competence

658   in obtaining or communicating the information and therefore had no reasonable grounds for

659   believing the representations to be true **(FB ¶¶ 68, 70).**

660   **168.** Defendants made these misrepresentations with the intent to induce Plaintiff to rely upon

661   them, specifically to induce him to enter into and renew his lease agreement and to make

662   substantial payments under the false belief that assistance would be provided **(FB ¶¶ 39-41, 53).**

663   **169.** Plaintiff justifiably relied on Defendants' negligent misrepresentations, given their

664   respective positions of authority as property managers and as a public housing authority

665   administering federal aid **(FB ¶¶ 23-25).**

666   **170.** As a direct and proximate result of his justifiable reliance on Defendants' negligent

667   misrepresentations, Plaintiff has suffered significant damages, including financial losses and

668   severe emotional distress **(FB ¶ 81).**

669   **171.** WHEREFORE, Plaintiff demands judgment against all Defendants for compensatory

670   damages incurred as a result of their negligent misrepresentations, as set forth in the Prayer for

671   Relief.

672

673   **COUNT X: CIVIL CONSPIRACY (Against All Defendants)**

674   **172.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

675   fully set forth herein. **This claim arises under state law and is brought pursuant to the**

32

676    Court's supplemental jurisdiction as it arises from the same common nucleus of operative

677    fact as Plaintiff's federal claims.

678    **173.** Upon information and belief, Defendants entered into an agreement or a "meeting of the

679    minds" to engage in a common scheme, the primary unlawful objective of which was to

680    improperly manage, control, and benefit from federal CARES Act funds to the detriment of

681    tenants like Plaintiff who were entitled to such aid **(FB ¶ 86)**.

682    **174.** This unlawful objective was achieved through wrongful acts, including but not limited to,

683    making fraudulent misrepresentations **(FB ¶¶ 39-44)**, breaching contractual and statutory

684    duties **(FB ¶ 45)**, and engaging in retaliatory conduct **(FB ¶¶ 66, 81)**, as detailed in the Factual

685    Allegations section of this Complaint.

686    **175.** In furtherance of their conspiracy, each Defendant committed overt acts. These acts are

687    detailed in the Factual Allegations section and include, but are not limited to: a. The Property

688    Management Defendants' inducement of a substantial payment from Plaintiff of over $10,000

689    based on false promises of aid **(FB ¶¶ 53-56)**; and b. Defendant RHA's provision of

690    contradictory and misleading public records concerning the disposition of federal funds **(FB ¶¶**

691    **105-109)**.

692    **176.** As a direct and proximate result of the conspiracy and the overt acts committed in

693    furtherance thereof, Plaintiff has suffered significant damages, including financial losses and

694    severe emotional distress **(FB ¶¶ 48, 81)**.

695    **Allegations Supporting Punitive Damages (Against Defendants Oakmont and FPI)**

696    **177.** The acts of Defendants Oakmont and FPI in furtherance of the conspiracy were committed

697    with malice, oppression, and/or fraud (**FB ¶¶ 53-61, 81**), warranting the imposition of punitive

698    damages against them pursuant to NRS 42.005.

699    **178.** WHEREFORE, Plaintiff demands judgment against all Defendants for compensatory

700    damages, and against Defendants Oakmont and FPI for punitive damages, incurred as a result of

701    their civil conspiracy, as set forth in the Prayer for Relief.

702

703    **COUNT XI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

704    **(IIED) (Against All Defendants)**

705    **179.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

706    fully set forth herein. **This claim arises under state law and is brought pursuant to the**

707    **Court's supplemental jurisdiction as it arises from the same common nucleus of operative**

708    **fact as Plaintiff's federal claims.**

709    **Element 1: Extreme and Outrageous Conduct**

710    **180.** Defendants, and each of them, engaged in a prolonged and multifaceted course of extreme

711    and outrageous conduct that goes beyond all possible bounds of decency and is utterly

712    intolerable in a civilized community. This conduct includes, but is not limited to:

713        a. Systematically making and breaking promises regarding essential federal rental

714        assistance during a public health crisis, thereby creating and exploiting Plaintiff's

715        financial vulnerability (**FB ¶¶ 33-36, 56, 68**);

34

716         b. Inducing Plaintiff to make a substantial payment of over $10,000 based on false

717         promises of aid, and then failing to provide the promised assistance (**FB ¶¶ 39-44, 53-**

718         **56**);

719         c. Engaging in a pattern of unreliable and manipulative accounting practices, including

720         placing false and misleading entries on Plaintiff's financial ledger (**FB ¶¶ 57-61**);

721         d. Failing to maintain essential, advertised security features such as functional gates over

722         a period of years, contributing to a sense of insecurity in Plaintiff's own home (**FB ¶¶ 27,**

723         **45**);

724         e. Imposing thousands of dollars in fabricated move-out charges and initiating aggressive

725         debt collection efforts as a means of retaliation and harassment (**FB ¶¶ 75-81**); and

726         f. Providing contradictory and misleading information regarding the disposition of federal

727         funds in response to official public records requests (**FB ¶¶ 105-109**).

728   **Element 2: Intent or Reckless Disregard**

729   **181.** Defendants acted with the intention of causing Plaintiff emotional distress, or with

730   conscious and reckless disregard for the high probability that their conduct would cause such

731   distress. This intent or reckless disregard is established by the persistent and repeated nature of

732   the wrongful acts, Defendants' awareness of Plaintiff's communicated financial hardship (**FB ¶¶**

733   **33, 85, 104**), and the significant power imbalance between Defendants and Plaintiff (**FB ¶¶ 23-**

734   **25**).

735   **Element 3: Severe Emotional Distress**

736    **182.** As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff

737    suffered debilitating, severe, and extreme emotional distress, including profound anxiety and

738    pervasive fear regarding his housing and financial stability. This distress significantly impaired

739    Plaintiff's professional capabilities as a web engineer/developer, leading to a work history gap

740    and severe financial detriment, including damaged credit and, ultimately, homelessness. **(FB ¶¶**

741    **66, 68, 74, 81).**

742    **Element 4: Causation**

743    **183.** Plaintiff's severe emotional distress was actually and proximately caused by the individual

744    and collective extreme and outrageous conduct of the Defendants.

745    **Allegations Supporting Punitive Damages (Against Defendants Oakmont and FPI)**

746    **184.** The acts of Defendants Oakmont and FPI constituting their extreme and outrageous conduct

747    were committed with malice, oppression, and/or fraud, warranting the imposition of punitive

748    damages against them.

749    **185.** Defendants' malice and oppression are evidenced by their pattern of making promises with

750    no intent to perform them, their exploitation of Plaintiff's known vulnerability during a

751    pandemic, and their retaliatory imposition of fabricated fees **(FB ¶¶ 53-54, 66, 81).**

752    **186.** Defendants' fraud is evidenced by their intentional misrepresentations regarding federal

753    assistance, which were made to induce Plaintiff's reliance and resulted in his financial

754    detriment **(FB ¶¶ 39-44).**

755

756 **COUNT XI: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED) (Pleaded**

757 **in the Alternative) (Against All Defendants)**

758 **187.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

759 fully set forth herein. This count is pleaded in the alternative to Plaintiff's claims for intentional

760 misconduct. **This claim arises under state law and is brought pursuant to the Court's**

761 **supplemental jurisdiction as it arises from the same common nucleus of operative fact as**

762 **Plaintiff's federal claims.**

763 **188.** As landlords, property managers, and administrators of public housing funds, all Defendants

764 owed Plaintiff a duty to exercise reasonable care in the management of his tenancy and

765 associated financial matters **(FB ¶¶ 23-26, 83)**.

766 **189.** In the alternative to allegations of intentional misconduct, Plaintiff alleges that Defendants

767 breached their duty of care through the negligent acts and omissions detailed throughout the

768 Factual Allegations section of this Complaint. This negligence includes the failure to provide

769 promised federal assistance **(FB ¶ 43, 56)**, the failure to maintain safe premises **(FB ¶ 45)**, the

770 mismanagement of Plaintiff's tenant account **(FB ¶¶ 57-61)**, and the provision of false and

771 misleading information **(FB ¶¶ 105-109)**.

772 **190.** It was reasonably foreseeable that the negligent mismanagement of Plaintiff's essential

773 housing stability and financial assistance, particularly during a public health crisis and a period

774 of known hardship **(FB ¶¶ 33, 104)**, would cause a person of ordinary sensitivity to suffer

775 serious emotional distress.

776 **191.** As a direct and proximate result of Defendants' negligence, Plaintiff has suffered significant

777 damages, including financial losses and severe emotional distress **(FB ¶ 81)**.

37

778    **192.** WHEREFORE, Plaintiff demands judgment against all Defendants for compensatory

779    damages incurred as a result of their negligence, as set forth in the Prayer for Relief.

780

781    **COUNT XII: PROMISSORY ESTOPPEL (Against Defendants Oakmont and FPI)**

782    **193.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

783    fully set forth herein.

784    **194.** Defendants Oakmont and FPI, through their agents, made clear and definite promises to

785    Plaintiff. These promises included, but were not limited to, representations that substantial

786    federal rental assistance would be provided **(FB ¶¶ 33-36, 53-54)**, that eviction would not be

787    pursued **(FB ¶ 37)**, and that significant fees would be reversed upon Plaintiff making a

788    substantial payment to bring his account current **(FB ¶ 54)**.

789    **195.** Defendants made these promises with the reasonable expectation that they would induce

790    Plaintiff to take specific actions, such as making a substantial payment **(FB ¶¶ 39-41)**, and to

791    forbear from other actions, such as seeking alternative housing sooner.

792    **196.** Plaintiff reasonably and justifiably relied on Defendants' promises to his detriment. In

793    reliance on these promises, Plaintiff made a substantial payment of over $10,000 **(FB ¶ 55)**and

794    continued his tenancy, only to have Defendants then fail to honor their commitments **(FB ¶ 56)**.

795    **197.** Injustice can only be avoided by the enforcement of Defendants' promises, as Plaintiff

796    suffered significant financial damages and the loss of his housing as a direct result of his

797    detrimental reliance on these unfulfilled promises **(FB ¶ 68)**.

798    **198.** WHEREFORE, Plaintiff demands judgment against Defendants Oakmont and FPI for

799    damages in an amount sufficient to remedy the injustice caused by his detrimental reliance, as set

800    forth in the Prayer for Relief.

801

802    **COUNT XIII: UNJUST ENRICHMENT (Against Defendants Oakmont and FPI)**

803    **199.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

804    fully set forth herein. **This claim arises under state law and is brought pursuant to the**

805    **Court's supplemental jurisdiction as it arises from the same common nucleus of operative**

806    **fact as Plaintiff's federal claims.**

807    **200.** Defendants Oakmont and FPI received benefits to which they were not equitably entitled.

808    These benefits include, but are not limited to: a. Federal rental assistance funds that were

809    intended for Plaintiff's benefit but were not properly applied to his account **(FB ¶¶ 43, 51, 99)**;

810    and b. Rent payments and fees collected from Plaintiff, including a substantial payment of over

811    $10,000, for amounts that should have been covered by said assistance **(FB ¶¶ 48, 55)**.

812    **201.** These benefits were conferred directly at Plaintiff's expense, as Plaintiff was deprived of the

813    aid to which he was entitled **(FB ¶ 43)** and was compelled to pay funds to Defendants that he

814    would not have otherwise owed had the assistance been properly applied **(FB ¶ 53, 55)**.

815    **202.** Under the circumstances, where Defendants were aware of Plaintiff's eligibility for federal

816    aid and his reliance on their promises to provide it **(FB ¶¶ 33, 41, 104)**, it is unjust and

817    inequitable for Defendants to retain the benefits they received at his expense.

818  **203.** As a result of Defendants' unjust enrichment, Plaintiff is entitled to restitution for the value

819  of the benefits unjustly retained by them.

820  **204.** WHEREFORE, Plaintiff demands judgment against Defendants Oakmont and FPI for

821  restitution of all benefits unjustly retained at Plaintiff's expense, and for all resulting

822  consequential damages, as set forth in the Prayer for Relief.

823

824  **COUNT XIV: BREACH OF THE COVENANT OF QUIET ENJOYMENT (Against**

825  **Defendants Oakmont and FPI)**

826  **205.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

827  fully set forth herein. **This claim arises under state law and is brought pursuant to the**

828  **Court's supplemental jurisdiction as it arises from the same common nucleus of operative**

829  **fact as Plaintiff's federal claims.**

830  **206.** At all relevant times, a landlord-tenant relationship existed between Plaintiff and

831  Defendants Oakmont and FPI **(FB ¶ 26)**. Implied in Plaintiff's lease agreement was a covenant of

832  quiet enjoyment, guaranteeing Plaintiff the right to possess and use his apartment without

833  substantial interference from Defendants or their agents.

834  **207.** Defendants, through their actions and omissions as detailed in the Factual Allegations

835  section, substantially and unreasonably interfered with Plaintiff's quiet enjoyment of the

836  premises. This interference included, but was not limited to:

837      a. Persistently failing to provide essential and advertised security, such as functional

838      gates **(FB ¶¶ 27, 38, 45)**;

839        b. Permitting or failing to abate excessive and ongoing noise disturbances (**FB ¶¶ 30-31**);

840        c. Subjecting Plaintiff to a pattern of harassment, retaliation, and wrongful eviction

841        threats (**FB ¶¶ 52, 66, 81**); and d. Creating severe financial pressure and uncertainty

842        through the mismanagement of assistance and the imposition of improper fees (**FB ¶¶ 47-**

843        **48, 61, 75**).

844   **208.** As a direct and proximate result of Defendants' breach of the covenant of quiet enjoyment,

845   Plaintiff suffered damages, including a diminished value of the tenancy for the period during

846   which his quiet enjoyment was disturbed, and severe emotional distress (**FB ¶¶ 27, 45, 81**).

847   **Allegations Supporting Punitive Damages**

848   **209.** The actions of Defendants Oakmont and FPI constituting the breach were committed with

849   malice, oppression, and/or fraud, warranting the imposition of punitive damages against them

850   pursuant to NRS 42.005 (**FB ¶¶ 39-44, 45, 81**).

851   **210.** WHEREFORE, Plaintiff demands judgment against Defendants Oakmont and FPI for

852   compensatory damages and for punitive damages, as set forth in the Prayer for Relief.

853

854   **COUNT XV: AIDING AND ABETTING TORTIOUS CONDUCT (Against Defendant**

855   **Reno Housing Authority)**

856   **211.** Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though

857   fully set forth herein. **This claim arises under state law and is brought pursuant to the**

858   **Court's supplemental jurisdiction as it arises from the same common nucleus of operative**

859   **fact as Plaintiff's federal claims.**

860    **212.** As alleged in the preceding counts of this Complaint, Defendants Oakmont and FPI (the

861    "Property Management Defendants") committed tortious acts against Plaintiff, including but not

862    limited to fraudulent misrepresentation and intentional infliction of emotional distress.

863    **213.** Upon information and belief, Defendant RHA had actual knowledge of the Property

864    Management Defendants' ongoing wrongful conduct. RHA obtained this knowledge through,

865    among other things, direct communication with Plaintiff regarding his inability to secure aid **(FB**

866    **¶ 104)** and through RHA's own direct awareness of the Property Management Defendants' non-

867    cooperation with assistance programs **(FB ¶¶ 90-91).**

868    **214.** Knowing of the Property Management Defendants' wrongful conduct, Defendant RHA

869    provided substantial assistance and encouragement to them. This assistance included, but was not

870    limited to, failing to exercise its own oversight responsibilities and providing misleading and

871    contradictory public records to Plaintiff regarding the disposition of federal funds, which created

872    a shield of inaction that enabled the Property Management Defendants' wrongful conduct to

873    continue **(FB ¶¶ 105-109).**

874    **215.** As a direct and proximate result of Defendant RHA's knowing and substantial assistance of

875    the other Defendants' tortious conduct, Plaintiff has suffered significant damages, including

876    financial losses, and severe emotional distress **(FB ¶ 81).**

877    **216.** WHEREFORE, Plaintiff demands judgment against Defendant Reno Housing Authority for

878    compensatory damages incurred as a result of its conduct in aiding and abetting the torts of the

879    other Defendants, as set forth in the Prayer for Relief.

880

881    **PRAYER FOR RELIEF**

882

883    **217.** WHEREFORE, Plaintiff respectfully prays for judgment against Defendants, and each of

884    them, as follows:

885    **A. For Compensatory Damages:** Awarding compensatory damages in an amount to be proven

886    at trial to compensate Plaintiff for all financial losses, including but not limited to, improperly

887    collected rent and fees, the diminished value of his tenancy, and the loss of federal assistance to

888    which he was entitled.

889    **B. For Emotional Distress Damages:** Awarding damages in an amount to be proven at trial for

890    the severe emotional distress, anxiety, humiliation, and other psychological harm suffered by

891    Plaintiff as a direct result of Defendants' conduct.

892    **C. For Punitive Damages:** Awarding punitive damages against Defendants Oakmont and FPI in

893    an amount sufficient to punish their malicious, oppressive, and fraudulent conduct and to deter

894    similar conduct in the future, as permitted by law.

895    **D. For Statutory Damages:** Awarding all statutory damages available under the federal and

896    state laws cited herein, including the False Claims Act, the Fair Housing Act, 42 U.S.C. § 1981,

897    and 42 U.S.C. § 1983.

898    **E. For Injunctive and Declaratory Relief:** Issuing an injunction prohibiting Defendants from

899    engaging in the unlawful practices described herein and declaring that Defendants' actions

900    violated Plaintiff's rights.