UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DOMINIC SON, | Case No.: 3:25-cv-00148-MMD-CSD |
| Plaintiff | **Order** |
| v. | Re: ECF No. 28 |
| OAKMONT PROPERTIES-AZURE, LLC, FPI MANAGEMENT, and HOUSING AUTHORITY OF THE CITY OF RENO, | |
| Defendants | |

Plaintiff initiated this action on March 17, 2025, with the filing of a *pro se* complaint asserting state-law claims against Defendants Oakmont Properties-Azure LLC and FPI Management, Inc. Plaintiff also sought leave to proceed *in forma pauperis*. Before the court considered the IFP application, Plaintiff filed several amended complaints, the last adding the Housing Authority of Reno ("RHA") as a defendant. On July 9, 2025, the court granted Plaintiff's IFP application but dismissed the complaint for lack of subject matter jurisdiction. (ECF No. 27.) The dismissal was without prejudice and with leave to file an amended complaint.

On July 24, 2025, Plaintiff filed a Fifth Amended Complaint (ECF No. 28), which the court now screens pursuant to 28 U.S.C. § 1915(e).

## II. SCREENING

**A. Standard**

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii). The court must also dismiss the case if at any time it determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at

570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Fifth Amended Complaint**

Plaintiff's Fifth Amended Complaint asserts fifteen causes of action, seven of which arise under federal law and the remainder of which arise under state law. Because the parties are not diverse, the court has jurisdiction only if the complaint states a federal claim. The court therefore considers first whether Plaintiff has stated any claim for relief under federal law. Relevant to Plaintiff's federal claims, the Fifth Amended Complaint alleges as follows:

In June 2020, Plaintiff entered into a lease agreement for a unit at the Azure Apartments in Sparks, Nevada. The apartments are owned by Oakmont and managed by FPI, referred to as the Property Management Defendants ("PMDs"). When Plaintiff started facing financial difficulty, PMD representatives advised him to halt rent payments and apply for CARES Act assistance using a form they provided. They advised Plaintiff they would help him secure aid. Plaintiff completed and returned the form, and PMDs stated he would not face eviction so long as he remained in contact about his request for aid.

On or about April 6, 2022, Plaintiff advised PMDs he had a "diagnosed disability" and was enduring ongoing financial distress. In response, FPI applied a $500 credit to Plaintiff's

3

account for a "tenant referral." Plaintiff alleges this "suggest[s] a misapplication or diversion of funds that should have been prioritized for federal aid purposes" because it happened at a time when he was still awaiting federal assistance.

At some point during Plaintiff's three-year tenancy, the PMDs issued a "formal eviction threat." The PMDs induced Plaintiff to make a $10,000 payment toward his outstanding balance by promising that federal aid was forthcoming and that when it was received, it would be applied to Plaintiff's account and all late fees would be reversed. However, after Plaintiff made the payment, the PMDs revised their estimate of how much assistance Plaintiff would receive and, ultimately, gave Plaintiff only a nominal credit. The PMDs charged Plaintiff late fees and penalties despite advising him to halt payments, and they maintained inaccurate and misleading accounting ledgers designed to obfuscate the true status of Plaintiff's account and the application of federal assistance funds. Despite "non-verbally confirm[ing] that federal pandemic assistance funds intended to benefit the Plaintiff had been received," the PMDs used the federal funds not for Plaintiff's benefit but for their own. (ECF No. 28 at 11.)

When Plaintiff confronted PMDs about the escalating fees and unfulfilled promises, he was accused of unacceptable behavior and in retaliation barred from the leasing office and "other community amenities." After ceasing communication with Plaintiff entirely, PMDs also "imposed restrictive communication protocols." (*Id.* at 13.) Defendants' actions exacerbated Plaintiff's diagnosed disability and led to "severe and debilitating anxiety," "significantly hindering" his ability to work. (*Id.*)

Throughout the relevant timeframe, Plaintiff had several brief periods of temporary employment. After Plaintiff lost one of his temporary jobs, PMDs offered to let him move out early instead of offering federal funds to help him. Upon moving out, the PMDs imposed several

unreasonable move-out charges, including for replacement of appliances that were in good working order.

At some point, unidentified in the complaint, Plaintiff made a public records request to RHA. RHA's response indicated that the PMDs had not received any federal funds for Plaintiff, but the documentation it provided showed that PMDs did receive federal assistance funds, including CARES Act emergency rental assistance, on behalf of other tenants. Although the federal funds were supposed to be used just for rent and late fees, Plaintiff asserts that RHA's records showed the funds were used for other purposes.

According to the complaint, PMDs and RHA have a "history of interaction due to their respective roles in the administration of housing assistance." Plaintiff alleges the coordinated effort is evidenced by the fact he was advised by the PMDs to submit applications for assistance through both their program and an RHA program. RHA told Plaintiff it could not obtain documents necessary for his application from PMDs, and Plaintiff would have to obtain the documents himself. However, when tried to do so, the PMDs refused to cooperate and his application through RHA therefore "did not result in aid." (*Id.* at 16.) When RHA denied one of Plaintiff's applications because he was temporarily employed, PMDs used that same reason to deny Plaintiff's application to their own program.

A. Count I: False Claims Act, 31 U.S.C. § 3729

Count I asserts a claim under the False Claims Act, 31 U.S.C. § 3729. While the False Claims Act provides for a private right of action, there are procedural requirements with which a plaintiff must comply. The complaint must be brought in the name of the United States Government. 31 U.S.C. § 3730(b)(1). A copy of the complaint and "written disclosure of substantially all material evidence and information the person possesses shall be served on the

Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure." *Id.* at § 3730(b)(2). And the complaint must be filed "in camera," and "shall remain under seal for at least 60 days." *Id.* The complaint does not allege that Plaintiff has complied with any of these requirements. Accordingly, Count I will be dismissed without prejudice, with leave to amend.

B. Count II: Racial Discrimination in Violation of the Fair Housing Act

Count II asserts that all defendants violated 42 U.S.C. § 3604, which, in relevant part, makes it unlawful to "make unavailable or deny[] a dwelling to any person because of race, . . . or national origin" and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, . . . or national origin."

Plaintiff alleges he is Vietnamese-American and Defendants discriminated against him because of his race and national origin by: (1) making material misrepresentations about availability of federal assistance to induce $10,000 payment; (2) failing to provide CARES act funds to Plaintiff while providing it to others; (3) subjecting Plaintiff to "unreliable and manipulative accounting practices"; (4) imposing fabricated and retaliatory move-out charges and then pursuing aggressive debt collection; and (5) barring Plaintiff from the leasing office and "other amenities" in retaliation for asserting his rights.

The complaint contains only a conclusory legal assertion that Defendants discriminated against Plaintiff due to his race or national origin. The complaint contains no facts to support such an inference, and thus does not state a claim to relief that is plausible on its face. Bare assertions of racial discrimination are insufficient to state a plausible claim. *See Ashcroft*, 556 U.S. at 680-81.

Further, none of the alleged discriminatory actions are attributable to RHA. Even assuming Plaintiff had stated a claim for violation of § 3604, he has not stated it against RHA.

Count II will therefore be dismissed without prejudice, with leave to amend.

C. Count III: 42 U.S.C. § 1981

In Count III, Plaintiff asserts all defendants violated 42 U.S.C. § 1981 by interfering with his contractual rights under his lease agreement based on his race or national origin. Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006). Making and enforcing contracts includes the "performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* at 475 (citing 42 U.S.C. § 1981(b)). The plaintiff "bears the burden of showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020). Section 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractor's Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982).

As with Plaintiff's Fair Housing Act claim asserting racial and/or national origin discrimination, Plaintiff's complaint does not allege sufficient facts to raise his claim above the speculative level. He does not allege any facts to support an inference that Defendants' actions toward him were "because of" his race. Accordingly, the complaint does not state a claim under § 1981.

Moreover, § 1981 does not provide for a private right of action against a state actor. *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) ("A plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983."). RHA,

a municipal corporation, is a state actor. *See Guy v. Carson*, No. 220CV01581DDPSHK, 2020 WL 3884904, at *9 (C.D. Cal. June 22, 2020), *report and recommendation adopted*, No. 220CV01581DDPSHK, 2023 WL 3604316 (C.D. Cal. May 23, 2023) (citing cases in which federal courts have treated housing authorities in California as entities subject to suit under § 1983); *Roces v. Reno Hous. Auth.*, 300 F. Supp. 3d 1172, 1176 (D. Nev. 2018); https://www.renoha.org/about/ (last visited Aug. 1, 2025) ("The Housing Authority of the City of Reno (Reno Housing Authority or RHA) was founded . . . as a municipal corporation under Nevada Revised Statute 315."). RHA is not therefore a proper party to Count III.

### D. Count IV: Fair Housing Act – Disability Discrimination

Count IV asserts a violation of 42 U.S.C. § 3604(f) against all defendants. Section 3604(f) prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . .that buyer or renter," and discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B).

"To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Giebeler*

*v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003). "Ordinarily, an accommodation is reasonable under the FHAA 'when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.'" *Id.* at 1157.

A "handicap" is (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h). Physical or mental impairments can include "emotional illness." 24 C.F.R. § 100.201(a)(1). "Major life activities mean functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* § 100.201(b).

While Plaintiff alleges he had a mental health condition, specified as an "adjustment disorder," he does not allege -- and the complaint contains no fact to support an inference that -- this condition substantially limited one or more of his major life activities during the timeframe in question. Nor does the complaint allege or explain what accommodation he needed or requested that was refused. The complaint therefore fails to state a claim for relief pursuant to 42 U.S.C. § 3604(f). Count IV will be dismissed without prejudice, with leave to amend.

E. Count V: Fourteenth Amendment Equal Protection - Disability

Count V asserts a violations of Plaintiff's equal protection rights under the Fourteenth Amendment. This claim is brought pursuant to 42 U.S.C. § 1983 against all defendants.

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To obtain relief pursuant to section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant must have "personally played a role in violating the Constitution.").

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Where state action does not implicate a protected class, a plaintiff can establish a "class of one" equal protection claim by demonstrating that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v.*

*Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). In class of one equal protection claims, the plaintiff must demonstrate he was discriminated against "intentionally," rather than accidentally or randomly. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). A "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Disability is not a suspect class for equal protection purposes. *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002). Therefore, to state a claim here, Plaintiff must allege facts showing the Defendants intentionally discriminated against him, and he was treated differently from others similarly situated – a class of one equal protection claim. The complaint alleges no facts supporting an inference that Plaintiff was treated differently from others similarly situated or that Defendants did so intentionally.

However, even if Plaintiff stated viable equal protection claims, the complaint also fails to allege sufficient facts to state a claim against any of the three defendants.

FPI and Oakmont are private parties, and private parties do not generally act under color of state law for purposes of § 1983. *See O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th Cir. 2023) (stating that only in "exceptional cases" will a private entity be treated as a state actor for constitutional purposes), *cert. denied*, 144 S. Ct. 2715 (2024). To be considered a state actor, a private party must meet either: "(1) the public function test, (2) the state compulsion test, (3) the nexus test [or] (4) the joint action test." *Id.* at 1157. There is nothing in Plaintiff's complaint to suggest that he would seek to apply either of the first two tests.

Under the nexus test, a party may be treated as a state actor where "there is 'pervasive entwinement of public institutions and public officials in [the private actor's] composition and

workings,'" or where "government officials have 'exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Id.* (citations omitted). Joint action can be shown "either 'by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.'" *Id.* at 1159 (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2023)).

> [J]oint action exists when the state has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." In other words, joint action is present when the State "significantly involves itself in the private parties' actions and decisionmaking" in a "complex and deeply intertwined process." This test is intentionally demanding and requires a high degree of cooperation between private parties and state officials to rise to the level of state action.

*Id.* at 1159-60 (citations omitted).

Plaintiff alleges that RHA acted in concert with the PMDs to deprive him of his equal protection rights. The complaint does not clearly allege the nature of the relationship between RHA and the PMDs, either generally or with respect specifically to the processing and decision-making regarding of emergency rental assistance applications under the CARES Act, and in particular, the applications Plaintiff made here.

The complaint asserts the following facts: (1) RHA has a history of "interaction" with the PMDs based on their administration of housing assistance; (2) RHA knew that the PMDs did not cooperate in providing relevant information necessary to process Plaintiff's assistance application; (3) RHA provided contradictory information in responding to Plaintiff's public records request and this obfuscated PMD's improper use of federal assistance funds; and (4) PMDs denied Plaintiff's application for assistance for the same reason RHA did (Plaintiff's temporary employment).

None of these allegations, however, support an inference that the PMDs were joint actors with RHA or that the PMDs' private decision-making was influenced in any way by the State. Nor are there any factual allegations to support an inference that RHA and PMDs were engaged in a conspiracy to deprive Plaintiff of his constitutional rights, especially and particularly his equal protection rights. While Plaintiff alleges that RHA provided contradictory information in its public records response that obfuscated the wrongdoing of the PMDs, the facts alleged do not support an inference that RHA's response was contradictory. The claim that RHA's documentation revealed PMDs used CARES Act funds being used for things other than their intended use is a bare assertion unsupported by any specific facts.

In addition, alleging the PMDs denied one of Plaintiff's assistance applications on the same grounds that RHA denied an assistance application does not support a plausible claim that the parties were conspiring against Plaintiff. A party's income is in all probability a relevant consideration in evaluating requests for assistance in many, if not most, scenarios. Accordingly, the Fifth Amended Complaint does not allege sufficient facts to subject the private actors to a claim for relief under § 1983.

As a municipality, RHA can be liable for the infringement of constitutional rights only under certain circumstances, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). A municipality may be liable under § 1983 for "constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Id.* at 602-03.

A municipality may not be sued under a respondeat superior theory because it employed an alleged wrongdoer. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019). "To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1)

13

[the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (Gordon II) (internal quotation marks and citation omitted).

The complaint contains no allegations to support a claim of municipal liability against RHA. Plaintiff does not allege any facts to state a plausible claim that RHA's actions were taken pursuant to an official policy, a pervasive practice or custom, a failure to train, supervise, or discipline, or a decision or act by a final policymaker. Accordingly, even if Plaintiff had otherwise stated a colorable equal protection claim under Count V, he has not sufficiently alleged the liability of RHA in connection therewith.

Count V will be dismissed without prejudice, with leave to amend.

F. Count VI: Fourteenth Amendment Equal Protection - Race

Plaintiff alleges the defendants violated his equal protection rights based also on his race. However, the complaint fails to allege facts sufficient to state a plausible claim that the defendants discriminated against Plaintiff on account of his race. Although Plaintiff alleges RHA "facilitat[ed] a system where federal funds were mismanaged or misreported in a manner that disparately harmed Plaintiff, a member of a protected class," (ECF No. 28 at 27), this is a bare allegation of wrongdoing unsupported by any facts. Further, as discussed above, Plaintiff has not alleged facts sufficient to state a claim that PMDs were state actors subject to § 1983 or to assert a claim of municipal liability against RHA. For those reasons, Count VI will be dismissed without prejudice, with leave to amend.

///

F. Count VII: First Amendment Retaliation

Plaintiff asserts that Defendants retaliated against him for: (1) making a public records request to RHA; and (2) "petitioning for a redress of grievances by disputing fees and asserting his rights." (ECF No. 28 at 28.) He alleges he was retaliated against when he was: (1) barred from the leasing office; (2) subjected to fabricated move-out charges; and (3) subjected to aggressive debt collection.

"Among other rights essential to freedom, the First Amendment protects 'the right of the people ... to petition the Government for a redress of grievances.'" *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 382 (2011). "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Id.* at 387.

To state a First Amendment retaliation claim, Plaintiff must "plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citation omitted).

To start, the PMDs are not state actors, and the complaint contains no factual allegations to state a plausible claim that PMDs should be treated as state actors for purposes of this claim. Plaintiff's bare assertion that RHA acted in concert with PMDS because PMDs retaliated against him at the same time he was seeking public records from RHA is insufficient to support an inference that there was joint action or conspiracy among the defendants. Plaintiff therefore does not state a First Amendment retaliation claim against the PMDs.

Second, while making a public records request to RHA may qualify as a petition for redress, none of the alleged retaliatory actions were taken by RHA. Rather, all were taken by the PMDs. There is therefore no nexus between Plaintiff's First Amendment activities and the defendants' alleged retaliatory actions.

Count VII will therefore be dismissed without prejudice, with leave to amend.

### G. State Law Claims

The court will not screen Plaintiff's state law claims unless and until it is clear the court has subject matter jurisdiction over this case.

### H. Form of Complaint

Plaintiff's Fifth Amended Complaint is not signed as required by Federal Rule of Civil Procedure 11(a), which provides: "Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." Plaintiff shall comply with Rule 11 in the filing of any amended complaint.

In addition, LSR 2-1 requires that any "civil-rights complaint filed by a person who is not represented by an attorney must be submitted on the form provided by this court or must be legible and contain substantially all the information called for by the court's form." If Plaintiff chooses to continue to assert a civil rights claim in his amended complaint, he must file the complaint on the court's form or ensure that the complaint contains all information requested in the court's form.

## IV. CONCLUSION

(1) Plaintiff's Fifth Amendment Complaint is **DISMISSED WITHOUT PREJUDICE**, for lack of subject matter jurisdiction, with leave to amend.

(2) Plaintiff's Motion for Leave to File a Fifth Amended Complaint (ECF No. 30) is **DENIED AS MOOT**, as the court had previously granted Plaintiff leave to file an amended complaint in its order of July 9, 2025.

(3) The Clerk of Court shall **SEND** Plaintiff a copy of the court's form for a civil rights complaint filed by a non-inmate plaintiff. If Plaintiff chooses to assert civil rights claims in an amended complaint, he must either use this form or ensure that all information requested in the form is contained within his amended complaint.

(4) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint addressing the deficiencies outlined in this Order. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading as "SIXTH AMENDED COMPLAINT." If Plaintiff fails to file an amended complaint within the 30 days, the action may be dismissed.

**IT IS SO ORDERED**.

Dated: August 5, 2025

_____
Craig S. Denney
United States Magistrate Judge